# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH CARRENO<br>　　　　　　　Plaintiff,<br>vs.<br>360 PAINTING, LLC, et al.<br>　　　　　　　Defendant. | CASE NO. 19cv2239-LAB (BGS)<br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Dkt. 4]** |

Currently before the Court is Defendant 360 Painting, LLC's Motion to Dismiss. Dkt. 4. For the reasons below, that motion is **GRANTED**.

## BACKGROUND

Defendant 360 Painting, LLC ("360 Painting") is a Virginia corporation that sells "business and commercial painting franchising systems." Dkt. 1 ("Compl.") at ¶ 2. In December 2017, Plaintiff Deborah Carreno and 360 Painting entered into a Franchise Agreement (Compl. at Exh. B, p. 188, "Franchise Agreement") whereby Carreno purchased two 360 Painting franchises in San Diego, CA. Compl. at ¶¶ 13, 19. This case largely centers around representations made to Carreno during those negotiations. California law generally requires that contractors operating within the state be licensed by the California Contractors State License Board ("CSLB"). Carreno alleges that representatives of 360 Painting told her during their negotiations that the company's business model would "accommodate the CSLB's licensing requirements." Compl. at

¶ 16. After the Franchise Agreement was executed, however, she became concerned that the CSLB would not permit her to operate under 360 Painting's "rent-a-license" business model. *Id.* at ¶ 28. After some time it was clear to Carreno that "Defendant 360 Painting [would be] unable to provide Plaintiff with necessary licenses to lawfully operate in California." *Id.* Carreno also alleges that 360 Painting took other steps to frustrate her franchising efforts, such as providing insufficient training and improper advertising materials. As a result of these various issues, the relationship between 360 Painting and Carreno deteriorated, and, in August 2018, the parties mutually agreed to part ways. *Id.* at 29.

Carreno brought this suit against 360 Painting alleging five causes of action related to the Franchise Agreement: (1) breach of the implied covenant of good faith and fair dealing, (2) negligent representation, (3) intentional misrepresentation, (4) unjust enrichment, and (5) unfair business practices. 360 Painting now moves to dismiss Carreno's First Cause of Action for Breach of the Implied Covenant and her Fourth Cause of Action for Unjust Enrichment.[1]

**ANALYSIS**

A Rule 12(b)(6) motion tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[1] The Franchise Agreement contains a choice-of-law provision purporting to apply Virginia law to disputes arising out of the Agreement. *See* Franchise Agreement at § 30.1. Both parties, however, rely exclusively on California law in their papers, and the Court will therefore apply California law to this dispute. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Garber*, 2007 WL 3407257, at *5 (E.D. Cal. Nov. 14, 2007) ("Where the parties fail to raise the issue of choice of law, the Court need not raise the issue *sua sponte*, and the parties are deemed to have acquiesced in the application of the law of the forum.") (quoting *Keles v. Yale Univ.*, 889 F.Supp. 729, 733 (S.D.N.Y. 1995)).

678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court need not accept legal conclusions couched as factual allegations. *See Twombly*, 550 U.S. at 555.

### A. Breach of Implied Covenant of Good Faith and Fair Dealing

The covenant of good faith and fair dealing is implied in every contract and exists to "prevent one contracting party from unfairly frustrating the other party's rights to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th 317, 349 (2000). In "situations where one party is invested with a discretionary power affecting the rights of another. . . . [s]uch power must be exercised in good faith." *Carma Developers, Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 372 (1992). A breach of the underlying contract is not required to state a claim for a breach of the covenant, but the covenant cannot impose duties that are not within the express terms of an underlying contract. *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal.App.4th 432, 447 (Cal.Ct.App.1993) ("If there exists a contractual relationship between the parties . . . the implied covenant is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract.").

Carreno points to four actions taken by 360 Painting that, in her view, constitute a breach of the implied covenant. First, the company failed to inform Plaintiff that the rent-a-license business model it marketed was no longer a legitimate method of meeting the CSLB license requirements. Second, it failed to aid her in obtaining the license required by the CSLB. Third, it failed to provide her with proper advertising materials. And finally, it failed to provide her with more than one day of field training. The Court takes these arguments in turn.

### 1. Failure to Inform and Assist in Securing Licensing

Carreno's first two arguments are related: (1) that 360 Painting breached the implied covenant by failing to inform her that the company's rent-a-license business

model was incompatible with the CSLB licensing requirements, and (2) that 360 Painting failed to assist her with securing licensing. Compl. at ¶ 16. Carreno claims that prior to signing the franchise agreement, a representative for 360 Painting, David Brand, told her that "the rent-a-license business model Defendant 360 Painting marketed . . . would accommodate the CSLB licensing requirements, thereby allowing Plaintiff to lawfully operate her Franchise Units in California." Compl. at ¶ 16. Another Painting 360 representative, Adam Ratcliff, told Carreno that "once [she] purchased the Franchise Units and completed . . . trainings with Ratcliff, [Carreno] would have the instrumentalities and licenses necessary to commence operations of her Franchise Units in California.[2] Compl. at ¶ 21.

Despite these assurances, Carreno was unable to operate her franchise units in California because 360 Painting's "rent-a-contractor license" model was unlawful under state law. Compl. at ¶ 25. By failing to inform her that the 360 Painting business model was incompatible with CSLB licensing requirements and that she would need additional licensing, Carreno alleges 360 Painting breached the implied covenant.

360 Painting argues, and the Court agrees, that Careno's "failure to inform" argument cannot form the basis for an Implied Covenant claim. The Franchise Agreement's language provides that the sole responsibility for complying with any licensing requirements fell on Carreno, the franchisee. The Franchise Agreement provides that a franchisee must "[c]omply with all applicable laws, rules, ordinances, and regulations that affect or otherwise concern the Business . . . ." and that the "[f]ranchisee will be solely responsible for obtaining any and all licenses and permits required to operate the Business . . . including . . . Home Improvement Contractor licenses and maintaining records demonstrating such compliance." Franchise Agreement at § 9.4. Because the Implied Covenant "is limited to assuring compliance with the express terms of the contract, and . . . cannot be extended to create obligations not contemplated in the

---

[2] The complaint does not allege when this conversation took place.

contract," the fact that the Franchise Agreement puts the onus on the franchisee to secure any applicable licenses means that 360 Painting's failure to inform her about licensing requirements cannot form the basis for an Implied Covenant claim. *Los Angeles Equestrian Ctr.*, 17 Cal.App.4th at 447.

Largely conceding that this "failure to inform" argument is contradicted by the express terms of the contract, Carreno also argues that statements made by 360 Painting *after* the parties entered into the Franchise Agreement constitute a modification of the contract. She points, for example, to an e-mail conversation she had with Mr. Brand in February 2018 in which she informed him that she was "hav[ing] a ton of CA issues." Compl. at ¶ 24. Mr. Brand responded, "I am close to wrapping up your licensing plan . . . I got you!" *Id.* In Carreno's view, even if the express terms of the Franchise Agreement put the burden on her to secure the appropriate licenses, this conduct by 360 Painting constituted a modification and shifted the burden to the company to secure licensing.

Under California law, an integration clause, like the one found in the Franchise Agreement, precludes a subsequent modification of a contract absent a writing signed by both parties. *See Manlin v. Ocwen Loan Servicing, LLC*, 2017 WL 8181141, at *2 (C.D. Cal. Aug. 1, 2017) (citing *Masterson v. Sine*, 68 Cal. 2d 222, 235 (1968); Cal. Civ. Code § 1698). Here, the Franchise Agreement contains an integration clause that provides: "[n]o agreement altering, changing, waiving or *modifying* any of the terms and conditions of this Agreement shall be binding upon either party unless and until the same is *made in writing* and *executed by all interested parties*." Franchise Agreement at § 40 (emphasis added). Mr. Brand's e-mail statements therefore cannot form the basis for a valid modification.

Carreno's argument that 360 Painting failed to inform her about the licensing requirements and failed to assist her with securing licensing cannot form the basis for an Implied Covenant claim. The Court therefore **GRANTS** 360 Painting's Motion to Dismiss this portion of the claim.

/ / /

### 2. Failing to Provide Plaintiff with Proper Advertising Materials.

Carreno next argues that 360 Painting breached the Implied Covenant when its contractor, The Print Authority, provided her with advertising materials that "did not adhere to California law." Compl. at ¶ 25.

This theory likewise cannot form the basis for an Implied Covenant claim. As Carreno herself notes in her opposition, she "does not allege that Defendant is liable for the state law violations of Print Authority [or] that Defendant violated any term of the contract with respect to this issue." Opposition, Dkt. 11, at 14. Instead, she argues that "Defendant could have verified that the Print Authority complied with California law and Defendant's advertising requirements before [it] recommended Print Authority's services to Plaintiff." *Id.* Given the threadbare nature of this claim, Carreno hasn't plausibly alleged how this printing error was so material that it frustrated the purpose of the Franchise Agreement, which is necessary to state a claim under the Implied Covenant. *See Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1175 (C.D. Cal. 2014) ("The implied covenant of good faith and fair dealing is read into a contract to prevent a contracting party from engaging in conduct which . . . frustrates the other party's rights to the benefits of the contract.") (quotation marks omitted). Further, to the extent Carreno is attempting to impose indemnification obligations on 360 Painting for omissions of its third-party printer, that is directly at odds with the language of the Franchise Agreement. *See* Franchise Agreement at § 18.1 (discussing indemnification of the franchisor by the franchisee, but not vice versa). As discussed earlier, the Implied Covenant cannot create obligations at odds with the explicit terms of an agreement. The Court therefore **GRANTS** 360 Painting's motion to dismiss this portion of Carreno's claim.

### 3. Failing to provide Plaintiff with more than a day of field training.

Carreno's final Implied Covenant claim is that, despite promising her a full week of field training, 360 Painting provided her with just one day of training. Compl. at ¶¶ 25, 38.

The Franchise Agreement addresses training in Section 14. That provision provides that "Franchisee (or its principal owner) and its Manager must attend and

successfully complete, to the satisfaction of Franchisor, an initial training program specified by Franchisor before the Franchised Business may open for business." Section 12 provides that "Franchisor will, upon the request of Franchisee, furnish a reasonable level of counseling and advisory services to Franchisee with respect to the opening and operation of the Business." There is simply no requirement in the Franchise Agreement that 360 Painting had to provide a full week of training to Carreno. Because the agreement is silent on this issue and because Carreno has not plausibly pled that the lack of training frustrated the purposes of the agreement, the Court **GRANTS** 360 Painting's motion to dismiss as to this part of the claim.

### B. Unjust Enrichment

360 Painting next moves to dismiss Carreno's claim for unjust enrichment. California law does not provide a standalone cause of action for "unjust enrichment." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (2010)). Where, as here, a plaintiff alleges a claim for unjust enrichment, a court may construe it as quasi-contract claim for restitution. *Id.* at 762 (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (2014)). However, a claim for unjust enrichment must fail if the parties are bound by an enforceable, express contract. *Sutra Beauty, Inc v. Duran*, 2019 WL 688201 at *3 (C.D. Cal. Feb. 15, 2019) (citing *Durell*, 108 Cal. Rptr. 3d at 699). Specifically, a claim for unjust enrichment cannot lie where a valid, express contract covering the same subject matter exists between the parties. *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996).

Carreno pleads in her complaint that "[b]y the wrongful acts and omissions as alleged and set forth in detail hereinabove, Defendant 360 Painting has been unjustly enriched at the expense of Plaintiff, and thus Plaintiff has been unjustly deprived." Compl. at ¶ 59. For this argument, she relies on a purported oral agreement on August 20, 2018 between herself and 360 Painting CEO Paul E. Flick ("Flick") whereby she would separate from the 360 Painting Franchise and the following would occur:

1) Plaintiff would not be responsible for royalties to the 360 Painting Franchise;

2) Plaintiff would be able to maintain control of social media and marketing accounts created for business use with respect to Franchise Units; and

3) Plaintiff would have access to the software used by the Franchise Units where all of Plaintiff's business proposals and contracts were stored.

Compl. at ¶ 30. Because Flick did not fulfill any of these oral agreements, Carreno alleges that Painting 360 has been unjustly enriched at her expense.

The Franchise Agreement, however, addresses the termination and post-termination obligations of the parties. *See* Franchise Agreement at §§ 22, 23. Because there is a valid, express agreement between the parties (the Franchise Agreement) that is related to the same subject matter as her unjust enrichment claim (the post termination obligations of the parties), her claim for unjust enrichment must fail as a matter of law. As such, the Court **GRANTS** the motion to dismiss as to Carreno's claim for unjust enrichment.

## CONCLUSION

Defendant's motion to dismiss is **GRANTED**. Dkt. 4. Carreno's First Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing is **DISMISSED WITHOUT PREJUDICE**. Carreno may amend, but only if she can show that 360 Painting breached the Implied Covenant in a way that does not impose obligations contrary to those in the express terms of the Franchise Agreement. Carreno's Fourth Cause of Action for Unjust Enrichment is **DISMISSED WITHOUT PREJUDICE**. Carreno may amend, but only if she can show that 360 Painting was unjustly enriched in way not encompassed within the subject matter of the express terms of the Franchise Agreement. If Carreno elects to amend, she must do so no later than **April 17, 2020**.

**IT IS SO ORDERED**.

Dated: March 16, 2020

*Larry A. Burns*
**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge