UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH CARRENO<br><br>          Plaintiff,<br><br>vs.<br><br>360 PAINTING, LLC, et al.<br><br>          Defendants.<br><br>And related counterclaim. | CASE NO. 19cv2239-LAB-BGS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [Dkt. 39]** |

On March 16, 2020, the Court dismissed Plaintiff Deborah Carreno's claims for unjust enrichment and breach of the implied covenant of good faith and fair dealing against Defendant 360 Painting, LLC ("360"). Carreno then filed her First Amended Complaint ("FAC"). In addition to amending the two previously-dismissed claims, the FAC includes a claim for breach of oral contract and six additional claims, all of which are based on the theory that 360 negligently or intentionally misrepresented that its "rent-a-license" business model complied with California law and would permit Carreno to operate a painting franchise by renting a contractor's license, rather than having one issued to her directly.

360 has moved to dismiss the FAC in its entirety. (Dkt. 39.) The FAC hasn't corrected the flaws in the two previously-dismissed claims. It fails to allege any consideration on Carreno's part for the alleged oral contract. And the alleged misrepresentations are non-actionable statements of opinion about the law, rather than statements of fact, so Carreno couldn't justifiably rely on them. Accordingly, 360's motion is **GRANTED**. Each of Carreno's claims is **DISMISSED WITHOUT PREJUDICE**.

## SUMMARY OF ALLEGATIONS

360 is a Virginia limited liability company that licenses painting franchises. In December 2017, Plaintiff Deborah Carreno entered into a Franchise Agreement with 360 to operate a painting business in San Diego, CA. This case largely centers around representations made to Carreno during those negotiations. California law generally requires that contractors operating within the state be licensed by the California Contractors State License Board ("CSLB"). Carreno alleges that representatives of 360 told her during their negotiations that the company's business model would "accommodate the CSLB's licensing requirements." (Dkt. 38 ¶ 16.) Carreno signed the Agreement relying on this representation. 360 subsequently told Carreno that it was "wrapping up [her] licensing plan." (*Id.* ¶ 27.) Carreno subsequently learned that California law did not permit the "rent-a-license" model that 360 used, and she informed 360 of that understanding of the law. (*Id.* ¶ 63.)

In August 2019, Carreno spoke with 360's CEO, Paul Flick, and they agreed that she would "separate from the [360] Franchise." (*Id.* ¶ 33.) Carreno and Flick agreed that she would not be responsible for royalties for her 360 franchise, she would maintain control of the social media and marketing accounts created for use with her franchise, and she would have access to 360's software that stored her business proposals and contracts. (*Id.* ¶ 34.) Nevertheless, 360 continued to charge royalties, and when Carreno followed

up with Flick, he wrote that 360 would "mail [a check] to [her]." (*Id.* ¶¶ 37-39.)

Carreno never received such a check, she continues to pay royalties to 360, and she doesn't have access to either the social media and marketing accounts or 360's software. She filed this action, alleging claims for breach of oral contract, breach of the implied covenant of good faith and fair dealing, intentional and negligent misrepresentation, rescission based on fraud, intentional and negligent interference with prospective economic relations, unjust enrichment, and unfair business practices.

## DISCUSSION

A Rule 12(b)(6) motion challenges the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 728, 732 (9th Cir. 2001). A plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

### A. Breach of Oral Contract

Carreno fails to state a claim for breach of oral contract under California law.[1] The elements for breach of oral contract are the same as breach of written contract: the parties had a contract; the plaintiff performed it or her performance was excused; the defendant breached it; and the plaintiff suffered damages.

---

[1] Although California courts favor enforcing choice of law provisions, 360 waived its right to claim Virginia law applies to the Franchise Agreement in briefing on the prior motion to dismiss. (Dkt. 16 at 2 n.1; Dkt. 38-1 at 41 ¶ 30.1). 360 doesn't establish any of the factors that would permit the Court to depart from the law of the case in that regard. *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

*Stockton Mortg., v. Tope*, 233 Cal. App. 4th 437, 453 (2014). Carreno alleges that Flick, on 360's behalf, orally agreed to release Carreno from her obligations under the Agreement, waiving 360's royalties and permitting Carreno to continue using the franchise's social media and marketing accounts and 360's software.

But the alleged oral agreement isn't a standalone agreement—it modifies termination duties imposed by the parties' prior written agreement, (*see* Compl. Ex. B, Dkt. 38-1 at 229, ¶ 23.2), which expressly precludes any oral modification. (*Id.* at 235, ¶ 40.) "[P]arties may, by their conduct, waive such a provision where evidence shows that was their intent." *Biren v. Equality Emergency Medical Group, Inc.*, 102 Cal. App. 4th 125, 141 (2002) (internal marks removed). But they can only do so where the oral agreement is supported by new consideration. *See* Cal. Civ. Code § 1698(c). Carreno alleges a wholly one-sided oral agreement, with 360 waiving right to payment while granting control of marketing accounts and access to software. 360's alleged promises, without any consideration in return, don't amount to a contract, and they can't be enforced on an oral contract theory.

Because Carreno's allegations leave room for the possibility that the alleged oral agreement involved some consideration not alleged in the FAC, this claim is **DISMISSED WITHOUT PREJUDICE**.

**B. Breach of Implied Covenant of Good Faith and Fair Dealing**

The Court previously dismissed Carreno's claim for breach of the implied covenant of good faith and fair dealing, but granted leave to amend if Carreno could allege a breach of the implied covenant without contradicting the terms of Agreement. (Dkt. 16 at 8.) But the FAC's claim relies on the same conduct as before—360's alleged failures to provide proper advertising materials and to provide counseling and advisory services in connection with obtaining a license. (Dkt. 38 ¶¶ 56-63.)

Just as before, the Franchise Agreement's requirement that 360 provide a reasonable level of counseling and advisory services doesn't vary its provision making Carreno "*solely responsible* for obtaining [a] license[]." (Dkt. 38-1 at 76 ¶ 9.4.) And just as before, the FAC fails to allege any facts that plausibly establish that the alleged printing error was "so material that it frustrated the purpose of the Franchise Agreement." (Dkt. 16 at 6.)

The FAC fails to state a claim for breach of the covenant of good faith and fair dealing. Carreno, given an opportunity to amend this claim, hasn't added anything of substance. The Court finds that further amendment would be futile, so the claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED WITHOUT PREJUDICE** but without leave to amend.

### C. Negligent and Intentional Misrepresentation

Carreno fails to state claims for negligent and intentional misrepresentation, too. Both claims require, among other elements, allegations that 360 made a misrepresentation of material fact and that Carreno justifiably relied on that misrepresentation. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173-74 (2003) (negligent misrepresentation); *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 974 (1997) (intentional misrepresentation).

Both misrepresentation claims fail, though, because they don't rest on a representation of fact, but instead on legal opinions that Carreno couldn't justifiably rely on. "An opinion on a question of law based on facts known to both parties alike by one occupying no confidential relation toward person to whom it is addressed does not justify such person in relying upon it." *Watt v. Patterson*, 125 Cal. App. 2d 788, 793 (1954) (intentional misrepresentation); *see also Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1473-74 (1990) (negligent misrepresentation). The alleged misrepresentation here is 360's statement that the rent-a-license model it used complied with California

1  law. (Dkt. 38 ¶ 28.) Carreno doesn't allege that 360 misrepresented any facts
2  about that model, though, only that California law would permit her to operate
3  with a rented license. (*Id.*) Because this alleged misrepresentation is one of
4  law, rather than fact, her claims based on that misrepresentation fail.

5        Carreno had another reason not to rely on 360's representation: the
6  Franchise Agreement made her "solely responsible for obtaining any and all
7  licenses and permits required to operate the Business." (Dkt. 38-1 at 76,
8  ¶ 9.4.) A plaintiff can't justifiably rely on misrepresentations as to the terms of
9  an agreement unless she didn't have a reasonable opportunity to review the
10 agreement before executing it. *See Rosenthal v. Great Western Fin. Securities*
11 *Corp.*, 14 Cal. 4th 394, 419-20 (1996) (plaintiff claiming fraud in execution of
12 contract can't justifiably rely on misrepresentation as to contents of written
13 agreement). The alleged misrepresentation that 360's rent-a-license model
14 was permissible under California law carried with it the implication that 360
15 would provide Carreno with a license through that means. That expectation is
16 what Carreno allegedly relied on, and 360's failure to provide a license is what
17 Carreno complains of. But the Franchise Agreement makes clear that 360
18 would *not* be responsible for providing Carreno with a license, and Carreno
19 fails to allege that she didn't have an opportunity to review the Franchise
20 Agreement. To the contrary, the most plausible inference from Carreno's FAC
21 is that she had at least eight days to review the Franchise Agreement before
22 she signed it, and there's no allegation that she was under any deadline to
23 execute the agreement. (*See* Dkt. 38-1 at 252 (Franchise Agreement stating
24 that it was signed as of "this 29th day of November 2017"); Dkt. 38 ¶ 20
25 (alleging that Carreno didn't sign the Franchise Agreement until December 7,
26 2017).)

27       Because Carreno couldn't justifiably rely on the alleged
28 misrepresentation, either as to its assertion regarding California law or its

implication that 360 would provide Carreno with the license necessary to operate her franchise, the FAC fails to state claims for intentional or negligent misrepresentation. Those claims are **DISMISSED WITHOUT PREJUDICE**.

### D. Fraudulent Inducement

Carreno seeks rescission of the Agreement based on a theory of fraudulent inducement. In California, fraud must be pled with specificity. *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 645 (1996). Carreno alleges that 360 failed to disclose that it was previously involved in a separate business that was similar to the franchises it now sells. However, Carreno doesn't allege any facts in support of this theory, offering only the legal conclusions that 360 "willfully and intentionally failed to disclose their prior involvement" in other, similar businesses without identifying the business or alleging facts that would indicate that 360 was involved in it. (Dkt. 38 ¶¶ 86, 88.)[2]

Carreno also alleges that Defendants "possessed material information . . . concerning the licensing requirements under California law" and failed to disclose that information. (*Id.* ¶ 87.) But as with her misrepresentation claims, this alleged failure to disclose the law doesn't permit Carreno to rescind the contract. *See Watt v. Patterson*, 125 Cal. App. 2d at 793. California's licensing requirements aren't secret, and parties to a contract don't have a duty to provide one another with legal advice in advance of execution.

The FAC fails to state a claim for fraudulent inducement. That claim is

---

[2] To the extent that Carreno intends to rely on the same documents she submitted in connection with her motion to dismiss the counterclaim, she doesn't attach them to the FAC or otherwise reference their contents in that pleading. And as the Court noted in denying her motion to dismiss, while Flick may have been involved in a prior similar business, he is not the "franchisor" under California law, and so Cal. Corp. Code § 31101 didn't require him to disclose those businesses to Carreno in connection with this transaction. *See* Cal.Corp. Code §§ 31007, 31101; Dkt. 38-2 at 193, 237 (Franchise Agreement identifying 360 as entity licensing franchise to Carreno).

**DISMISSED WITHOUT PREJUDICE**.

### E. Negligent and Intentional Interference with Prospective Economic Relations

In California, a plaintiff must allege acts "wrongful apart from the interference itself"—that is, "proscribed by some constitutional, statutory, regulatory, common law, or other determinable standard"—to allege a claim for negligent or intentional interference with economic relations. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153-54, 1159 (2003) (intentional interference); *see also Venaus v. Schultz*, 155 Cal. App. 4th 1072, 1079 (2007) (negligent interference).

The only wrongful acts that Carreno relies on for her interference claims are Defendants' alleged misrepresentations. (Dkt. 38 ¶¶ 95, 101; Dkt. 41 at 15-16.) But as discussed above, Defendants' alleged misrepresentations were opinions of law, not statements of fact, and thus not "proscribed by . . . common law." *Korea Supply*, 29 Cal. 4th at 1159. Without alleging an independent wrongful act, the FAC fails to state a claim for intentional or negligent interference with prospective economic relations. Those claims are **DISMISSED WITHOUT PREJUDICE**.

### F. Unjust Enrichment

A claim for unjust enrichment cannot stand where the parties have a valid, express contract covering the same subject matter. *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996). The Court's previous order dismissed Carreno's claim but permitted amendment to add allegations that would establish that 360 was unjustly enriched in a way not encompassed by the Franchise Agreement. The FAC's unjust enrichment claim seeks to avoid this issue by working from the premise that the Franchise Agreement is void and unenforceable as a result of Defendants' alleged misrepresentations. (Dkt. 38 ¶ 106.) For the same reasons that the FAC fails

to establish a basis to rescind the Franchise Agreement, then, it fails to state a claim for unjust enrichment.

Although this claim has been dismissed once before, it may be viable if Carreno can identify a *factual* misrepresentation that supports rescission of the contract. Accordingly, it is **DISMISSED WITHOUT PREJUDICE**, but unlike the claim for breach of the implied covenant of good faith and fair dealing, Carreno may seek leave to amend this claim.

### G. Unfair Business Practices

Carreno's claim under California's Unfair Competition Law, like her interference, rescission, and unjust enrichment claims, relies exclusively on Defendants' allegedly fraudulent acts. (Dkt. 38 ¶ 110.) And as discussed above, there's no fraud in statements of legal opinion, nor would a reasonable consumer rely on such statements. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2015). Because Carreno hasn't alleged any fraudulent act or practice, she hasn't alleged a claim under that prong of the UCL. Her claim under that statute is **DISMISSED WITHOUT PREJUDICE**.

### CONCLUSION AND ORDER

For these reasons, Defendant's motion to dismiss is **GRANTED**. Each of Carreno's claims is **DISMISSED WITHOUT PREJUDICE**. Carreno may amend all but the claim for breach of the implied covenant of good faith and fair dealing, as the failure to correct that claim's flaws demonstrates the futility of further amend. If she elects to amend, she must file a motion seeking leave to amend no later than **April 9, 2021**.

**IT IS SO ORDERED**.

Dated: March 19, 2021

HON. LARRY ALAN BURNS
United States District Judge